IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION,                            *

    Plaintiff,                              *

    v.                                      *    Civil Action No.: RDB-08-2562

CDG MANAGEMENT, LLC, *et al.*,          *

    Defendants.                             *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") brings this employment discrimination action against Defendants CDG Management, LLC, Civic Development Group, LLC, and Millennium Teleservices, LLC (collectively "Defendants")[1], alleging that since at least January 1, 2005, Defendants have engaged in an ongoing pattern or practice of sex discrimination against female job applicants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and (a)(2) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Currently pending before this Court is Plaintiff's Motion for Default Judgment and Entry of Relief. (ECF No. 40.) This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Plaintiff EEOC's Motion for Default Judgment and Entry of Relief (ECF No. 40) is GRANTED in part and DENIED in part.

---

[1] On March 1, 2010, all three defendants filed petitions for relief under Chapter 7 of the United States Bankruptcy Code, a bankruptcy trustee has been appointed, and the companies are in the process of liquidating their assets. Although Defendants initially defended against this lawsuit by filing an Answer to Plaintiff's Complaint, in a letter dated April 22, 2010 to Plaintiff, Defendants' bankruptcy trustee stated that it would not be retaining special counsel and would not be defending Plaintiff's lawsuit.

BACKGROUND

Defendant CDG Management, LLC is a New Jersey-based telemarketing service provider that operates call centers and conducts fundraising campaigns for various entities. *See* Pl.'s Mem. Supp. Mot. Default J. at 3. Defendants Civic Development Group, LLC and Millennium Teleservices, LLC are wholly owned subsidiaries of CDG Management, LLC. *Id.* at 4. All three Defendants have filed petitions for relief under Chapter 7 of the United States Bankruptcy Code, and are no longer in business. *See In re CDG Mgmt., et al.*, 10-15894-RTL (Bankr. D. N.J.). Plaintiff EEOC filed a Complaint in this Court on September 29, 2008 on behalf of a class of aggrieved female applicants seeking employment as telemarketers at Defendants' Maryland call centers. *See* Compl. ECF No. 1. Specifically, the EEOC alleges that Defendants subjected female job applicants to "an ongoing pattern or practice of discriminatory failure to hire such persons at their Maryland call centers because of their sex (female)." *Id.* ¶ 7.

Defendants answered Plaintiff's Complaint on December 5, 2008. *See* Answer, ECF No. 10. On the same date, Defendants moved to stay the proceedings pending the exhaustion of administrative proceedings in connection with a Commissioner's Charge filed against Defendants. *See* Defs.' Mot. Stay. Proceedings, ECF No. 11. This Court granted the motion to stay, as well as several subsequent joint motions to extend the stay. *See* Orders, ECF Nos. 22, 24, 26, 28, and 30.

On February 16, 2010, Defendants filed a Motion to Withdraw Appearance as Counsel. ECF No. 31. In their motion to withdraw, Defendants' attorneys noted that CDG's financial condition had deteriorated to the point where the company ceased all business operations and was unable to provide direction or assistance to counsel in the defense of this action. *See id.*

This Court granted the motion to withdraw on the same day it was filed. *See* Order, ECF No. 32. On March 3, 2010, this Court issued an Order directing Defendants to enter an appearance on behalf of the corporate Defendants within 30 days in order to comply with Local Rule 101.2.b, which requires a corporation to be represented by counsel. Order, ECF No. 34. Defendants were notified that a failure to comply with the Court's Order could result in the imposition of sanctions or the entry of default judgment. *Id.* Defendants failed to comply with the order requiring entry of an appearance on behalf of the corporate Defendants.

Plaintiff subsequently learned that all three defendants filed petitions for relief under Chapter 7 of the United States Bankruptcy Code on March 1, 2010. Thereafter, Plaintiff sent a letter to the bankruptcy trustee assigned to the matter to inquire whether the Debtor Estate would enter an appearance on behalf of Defendants. *See* EEOC Letter, ECF No. 35-1. On April 20, 2010, the bankruptcy trustee informed the EEOC that the Debtor Estate would not hire special counsel and would not defend against the pending lawsuit. *See* Trustee Letter, ECF No. 35-1. Because it was readily apparent that Defendants and their appointed bankruptcy trustee did not intend to defend Plaintiff's lawsuit, on April 28, 2010, this Court ordered that the Clerk enter default against Defendants and instructed the EEOC to file a motion for default judgment. *See* Order, ECF No. 36. On April 30, 2010, the Clerk entered default against Defendants. Default Entry, ECF No. 37. The EEOC filed this Motion for Default Judgment and Entry of Relief (ECF No. 40) on June 9, 2010. Defendants have not entered an appearance or submitted any papers contesting Plaintiff's Motion.

## STANDARD OF REVIEW

Entries of default and default judgments are governed by Rule 55 of the Federal Rules of

Civil Procedure. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." If, after entry of default, the Plaintiff's Complaint does not specify a "sum certain" amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2). In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). However, "liability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998); *see also Ryan*, 253 F.3d at 780-81. Although the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then turn to the determination of damages. *See Ryan*, 253 F.3d at 780-81. The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d. at 422. Federal Rule of Civil Procedure 54(c) limits the type and amount of damages that may be entered as a result of a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to

4

be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D. D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). In doing so, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, No. WDQ-09-3144, 2010 WL 4629898, at *3-4 (D. Md. May 25, 2010) (collecting cases); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010).

## ANALYSIS

In considering the present motion for default judgment, this Court must (1) determine whether the facts alleged in Plaintiff's Complaint, taken as true, establish liability on the part of Defendants, and, if they do, (2) make an independent determination regarding the appropriate award of damages.

**1. Defendants' Liability**

The allegations of liability contained in Plaintiff's complaint, Motion for Default Judgment, and attachments thereto, taken as true, establish that Defendants have engaged in unlawful employment practices at their Maryland call centers, in violation of Title VII of the Civil Rights Act of 1964. Title VII provides, in pertinent part: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff alleges that since at least January 1, 2005, Defendants engaged in an ongoing pattern or practice of discrimination in failing to hire female telemarketers because of their sex. Compl. ¶ 7. Plaintiff proffers numerous incidents of anecdotal evidence to support its charge that Defendants engaged in a pattern or practice of sexual discrimination. *See* Pl.'s Mem. Supp. Mot. Default J. at 5-7, ECF No. 40; *see also* Affs. Supp., ECF Nos. 40-2, 40-3, and 40-4. Plaintiff alleges that individual managers at Defendants' Maryland locations were instructed not to hire females as telemarketers. *See id.* Moreover, Plaintiff alleges that Defendants' discriminatory practices were not limited to their Maryland locations, but rather, were promulgated from Defendants' corporate headquarters to its call centers nationwide. Plaintiff alleges that the source of the discrimination was the belief among Defendants that women were inferior telemarketers because they do not have "strong" and "deep, loud voices," and "historically don't collect well." *Id.* In addition to anecdotal evidence, Plaintiffs present statistical evidence that further corroborates the allegations that Defendants engaged in discrimination in the hiring of telemarketers on the basis of gender. *See id.* The statistical analysis presented by Plaintiff indicates that women were hired at a significantly lower rate than men and that this lower rate of hiring could not be expected to occur by chance. *See id.*

Under the standard set forth by the Supreme Court in *International Brotherhood of Teamsters v. United States*, in discrimination pattern and practice cases, the plaintiff bears the burden of proving "more than the mere occurrence of isolated or 'accidental' or sporadic

discriminatory acts." 431 U.S. 324, 336 (1977). The plaintiff must establish by a preponderance of the evidence that the discrimination was the "company's standard operating procedure—the regular rather than unusual practice." *Id.* It is well established that in pattern or practice cases, the *prima facie* case "may be made out by statistics alone, or by a cumulation of evidence, including statistics, patterns, practices, general policies, or specific instances of discrimination." *E.E.O.C. v. Am. Nat'l Bank*, 652 F.2d 1176, 1188 (4th Cir. 1981) (citing *Teamsters*, 431 U.S. at 339; *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-308 (1977); *Barnett v. W.T. Grant Co.*, 518 F.2d 543, 549 (4th Cir. 1975).

Here, Plaintiff relies on anecdotal and statistical evidence to show that Defendants engaged in a pattern or practice of employment discrimination on the basis of gender. In specific cases, Defendants did not hire females because they believed women were not as effective at telemarketing as men, and statistical evidence shows that females were hired at significantly lower rates than expected. Under these facts, Defendants' liability under Title VII is established.

## 2. Damages

In the present case, Plaintiff's Complaint does not seek a specified amount of damages. Rather, it seeks to "make whole a class of aggrieved female applicants . . . by providing appropriate back pay, . . . front pay, . . . compensation for pecuniary and nonpecuniary losses, . . . and punitive damages." Compl. at Prayer for Relief. Pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." As the United States Court of Appeals for the Fourth Circuit previously stated, interpretation of Rule 54(c) has "led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not

7

exceed in amount that prayed for in the demand for judgment." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) (internal quotation marks and citation omitted). Nevertheless, this Court has held that as long as the defendant receives notice that some damages may be awarded, allegations and supporting affidavits regarding damages suffice to support a default judgment for money damages. *See Monge v. Portofino Ristorante, et al.*, No. WDQ-09-3144, 2010 WL 4629898, at *6 (D. Md. May 25, 2010). Here, Defendants had notice of the damages sought by Plaintiffs through the Complaint, and the documents supporting Plaintiff's Motion for Default Judgment.

The EEOC seeks the following monetary damages in this case: $7,404,730.00 in back pay for identified and unidentified claimants; $22,214,190.00 in punitive damages for conduct that was malicious and/or undertaken in reckless disregard of the claimants' rights under Title VII; and post-judgment interest on any monetary award entered by this Court. In addition, the EEOC is seeking certain nonmonetary injunctive relief. Each of the following categories of damages will be discussed in turn.

i. <u>Back Pay</u>

Back pay relief is authorized under Section 706(g) of Title VII. 42 U.S.C. § 2000e-5(g)(1). The Supreme Court has recognized a presumption in favor of back pay awards to victims of employment discrimination in order to further Title VII's dual objectives of making individuals whole for harm suffered due to discrimination and to deter unlawful employment practices. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-18, 421 (1975). The Fourth Circuit has noted that "a Title VII Plaintiff is generally entitled to back pay 'as a matter of

course.'" *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (quoting *Albemarle Paper Co.*, 422 U.S. at 420).

Here, Plaintiff requests a back pay award of $7,404,730.00. In support of this amount, Plaintiff relies on the affidavit of Elvira Sisolak, which it submitted in support of the present motion for default judgment. *See* Sisolak Aff., ECF No. 40-4. Plaintiff calculated back pay for a total of 1,301 claimants which results in an award of $6,242,699.00. When interest is added to the amount, the total becomes $7,404,730.00. This Court has reviewed Plaintiff's methodology and calculations and finds them to accurately represent the amount of back pay to which Defendant is liable. Therefore, Plaintiff's Motion for Default Judgment (ECF No. 40) is GRANTED as to the award of $7,404,730.00 in back pay.

ii. Punitive Damages

The EEOC seeks an award of punitive damages in the amount of $22,214,190.00. This amount triples the back pay award of $7,404,730. Prior to 1991, only equitable relief was available to prevailing Title VII plaintiffs. However, with the passage of the Civil Rights Act of 1991, punitive damages are available for a Title VII action in limited circumstances. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). Section 1981a(b)(1) of the 1991 Act describes the circumstances under which punitive damages are available:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices *with malice or with reckless indifference to the federally protected rights of an aggrieved individual*.

42 U.S.C. § 1981a(b)(1) (emphasis added). The Supreme Court noted that in passing Section 1981, "Congress plainly sought to impose two standards of liability—one for establishing a right

9

to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award." *Kolstad*, 527 U.S. at 534. In considering Section 1981, the Court has held that it is the employer's state of mind that dictates whether the imposition of punitive damages is warranted: "The employer must act with malice or with reckless indifference *to the [plaintiff's] federally protected rights*. The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535 (emphasis in original) (citation omitted). Furthermore, the Court has cautioned that:

> There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

*Id.* at 537.

Plaintiff argues that the evidence it has presented to this Court demonstrates that Defendants acted with malice or reckless indifference to the claimant's federally protected civil rights and that punitive damages are therefore warranted. However, standing alone, Plaintiff's accusations and averments do not satisfy the "higher standard" on which a decision awarding punitive damages must be based. *Id.* at 534. Specifically, Plaintiff has not satisfied its burden with respect to Defendants' state of mind. While this Court has already determined that Defendants are liable under Title VII for gender discrimination, nothing in the record indicates that Defendants knew "that [they] may be acting in violation of federal law." *Id.* at 535.

Therefore, It is impossible for this Court to conclude that Defendants acted with the requisite malice or reckless indifference necessary to impose punitive damages.

As an additional matter, this Court is not blind to the fact that the Defendants in this case have filed petitions for relief under Chapter 7 of the United States Bankruptcy Code, are in the process of liquidating assets, and are no longer in business. As one of the purposes of punitive damages is to deter future wrongdoing, *see Cooper Industries, Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001), an imposition of punitive damages in this case would not serve that important purpose.

Therefore, for the reasons stated above, Plaintiff's Motion for Default Judgment and Entry of Relief (ECF No. 40) is DENIED with respect to Plaintiff's request for punitive damages.

iii. Post-Judgment Interest

Plaintiff seeks post-judgment interest for any award of monetary damages entered by this Court. "Interest shall be allowed on any monetary judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, Plaintiff's Motion for Default Judgment and Entry of Relief (ECF No. 40) is GRANTED with respect to Plaintiff's request for post-judgment interest.

iv. Nonmonetary Relief

Finally, Plaintiff requests this Court to award certain nonmonetary future injunctive relief. Specifically, Plaintiff requests that Defendants and their successors be enjoined from engaging in sex discrimination against female job applicants and female employees. In addition, Plaintiff requests that Defendants and their successors implement and adhere to an affirmative action plan for recruiting, hiring and retaining female job applicants, the details of which are to

be determined by this Court at a later date should Defendant companies emerge from Chapter 7 bankruptcy. Title VII provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1).

Defendants have filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, a trustee has been assigned and the companies are in the process of liquidating their assets—the companies have ceased all business operations, terminated all employees, and are not open for business. Any award of future injunctive relief by this Court would essentially be moot insofar as it would rest on the improbable possibility that Defendants' companies will, sometime in the future, resume business operations. Therefore, Plaintiff's Motion for Default Judgment and Entry of Relief is DENIED as to Plaintiff's request for nonmonetary relief.

## CONCLUSION

For the reasons stated above, Plaintiff EEOC's Motion for Default Judgment and entry of Relief (ECF No. 40) is GRANTED in part and DENIED in part.

A separate Order follows.

Dated:   November 24, 2010          /s/_____
                                     Richard D. Bennett
                                     United States District Judge